IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OSCAR ROLANDO RAMOS GONZALEZ,** *Petitioner,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **ANDY CRUZ, Warden, Federal Detention Center, Philadelphia,** ***et al.,*** *Respondents.* | : | **No. 26-cv-8300** |

**MEMORANDUM**

**KENNEY, J.** **NOVEMBER 12, 2026**

Before the Court is Petitioner Oscar Rolando Ramos Gonzalez's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention pursuant to 28 U.S.C. § 2241. *See* ECF No. 1 ¶¶ 5, 7. Respondents oppose any relief. *See* ECF No. 6. For the reasons set forth below, the Court will **GRANT** the Petition (ECF No. 1), and order Respondents to **IMMEDIATELY RELEASE** Petitioner from detention.

## I. BACKGROUND

### A. Factual Background

Petitioner was born in Honduras and later entered the United States without inspection in approximately 2021. *See* ECF No. 1 ¶¶ 18–19, 22. Petitioner lives in Philadelphia, Pennsylvania, where he works as a delivery driver and supports his family.[1] *See id.* ¶ 18. Respondents report that "[Petitioner] does not have any known criminal record" and that "[Petitioner] does not have any outstanding wants or warrants." ECF No. 6-1 at 3.

On October 27, 2026, Petitioner was driving a work vehicle, making a delivery. ECF No. 1 ¶ 20. Petitioner was driving, while a coworker sat in the passenger's seat. *Id.* That morning,

[1] Petitioner's daughter is a United States citizen. *Id.* ¶ 18.

two plainclothes officers stopped Petitioner's work vehicle for a "routine," or "random" inspection." *Id.*; ECF No. 6 at 1–2. One officer identified himself as an ICE officer and asked Petitioner for his license and vehicle registration. ECF No. 1 ¶ 20. Petitioner complied and provided the documents to another officer, who identified himself as an officer with U.S. Immigration and Customs Enforcement ("ICE"). *Id.* The officers took Petitioner's documents and walked away for approximately twenty (20) minutes before one of the officers, who had identified himself as an ICE officer, returned to Petitioner's vehicle. *Id.* The officer asked Petitioner if he had a pen to sign something. *Id.* Petitioner responded that he did not. *Id.* In response, the ICE officer told Petitioner that, "he needed to speak English because he lives here." *Id.*

After another fifteen (15) minutes, the ICE officer again returned to Petitioner's vehicle. *Id.* The ICE officer asked Petitioner to confirm his full name before arresting him pursuant to 8 U.S.C. § 1226(a). *See id.*; *see also* ECF No. 6 at 1. Petitioner exited the vehicle and was placed in handcuffs. ECF No. 1 ¶ 20. Petitioner was not presented with a warrant before being taken into custody. *Id.*; *see also* ECF No. 6 at 1–2 (stating that "[o]n October 27, 2026, during commercial vehicle inspections in Bristol, Pennsylvania, at approximately 10:15 a.m., Supervisory Detention and Deportation Officer (SDDO) Clark . . . randomly inspected Petitioner's Isuzu" and "served the I-200 on Petitioner at the time of his arrest at approximately *11:22 a.m.*" (emphasis added)).

After he was taken into custody, Petitioner was taken to a nearby Wawa convenience store, approximately three (3) minutes from the scene of Petitioner's "random inspection" and arrest. *See* ECF No. 1 ¶ 21. Once at the Wawa convenience store, Petitioner was placed into another vehicle and was bound by additional restraints around his feet and waist. *Id.* Petitioner was detained in this other vehicle at the Wawa convenience store for an additional five (5) minutes

before he was eventually transported to the ICE Field Office. *Id.* Once back at the Field Office, ICE agents processed Petitioner as a noncitizen for the first time. *Id.* ¶ 22. It was at this point that Petitioner was given a Form I-200 Warrant and a Notice to Appear ("NTA"). *Id.*; *see also* ECF No. 9 at 1 (submitting that Petitioner was served with "the Notice to Appear . . . between approximately 3:00 and 4:00 PM at the Philadelphia Field Office on October 27, 2026").

Thereafter, Petitioner was transported to the Federal Detention Center in Philadelphia, where he remains. ECF No. 1 ¶¶ 22–23. The Petition (ECF No. 1) followed.

### B. Procedural Background

On October 29, 2026 Petitioner filed the Petition. *Id.* In his Petition, Petitioner challenges the legality of his detention and asserts claims for relief pursuant to the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, and the *Accardi* doctrine. *Id.* ¶¶ 56–75. Thereafter, the Court directed Petitioner to serve the Petition on Respondents and ordered Respondents not to transfer Petitioner and to respond to the Petition. ECF No. 3 at 1–2. The Court specifically directed Respondents to include: (1) the circumstances of Petitioner's arrest; (2) whether ICE had a Form I-200 Warrant for Petitioner's arrest and, if so, whether the warrant was generated before or after Petitioner's arrest; (3) whether Petitioner has any criminal history; and (4) the time and place of Petitioner's bond hearing before an immigration judge. *Id.* at 2. Respondents filed a Response in Opposition to the Petition (the "Opposition") as directed. ECF No. 6.

In the Opposition, Respondents conceded that Petitioner was arrested before a Form I-200 Warrant was generated; the Opposition was silent as to the generation and/or issuance of Petitioner's NTA. *Id.* The Court instructed Respondents to file a supplemental response addressing certain ambiguities and inconsistencies in the Opposition. ECF No. 8. Respondents

filed a Supplemental Response, the Declaration of Supervisory Detention and Deportation Officer Jeffrey Clark (the "Supplemental Response") which provides some clarity as to the approximate timeline, or sequence of events in this case. ECF No. 9. Accordingly, the issue has been fully briefed and will be decided on the basis of the Parties' written submissions.

## II. LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III. DISCUSSION

The Petition seeks Petitioner's release, on the ground that Respondents unlawfully arrested and detained him "without a warrant and without any individualized pre-deprivation process." ECF No. 1 ¶ 1. Petitioner challenges his arrest and detention as violative of the INA, the Due Process Clause of the Fifth Amendment, his due process rights, and the *Accardi* Doctrine. *Id.* ¶¶

54–85. Petitioner asks this Court to Order his immediate release from detention. *See id.* at 25 ("Prayer for Relief").

**A. Administrative Exhaustion**

Before seeking judicial relief, habeas petitioners "are ordinarily required to exhaust their administrative remedies. . . ." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." (collecting cases)). However, exhaustion can be excused in circumstances where: (1) exhaustion "would be futile[;]" (2) "the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]" or (3) "if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (citation omitted). "[T]he exhaustion doctrine is not supposed to preclude judicial relief . . . ." *Id.* (citation omitted).

Under the circumstances of this particular case, exhaustion "would be futile" and the actions of ICE "clearly and unambiguously" violated Petitioner's statutory rights and implicate constitutional concerns. *Id.* As relevant here, courts have found that "[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). As discussed *infra* Part III(b), Respondents did not detain Petitioner pursuant to a valid Form I-200 Warrant, so requiring a bond hearing at this posture would be futile in remedying Petitioner's current unlawful and invalid detention. *See Dos Reis*, 2026 WL 1746649, at *3; *see also Melendez-Guzman v. Jamison*, No. CV 26-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) ("Petitioner alleges that he is *currently* being deprived of liberty unlawfully, so administrative processes such

as a bond hearing that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing constitutional deprivation." (emphasis in original) (citations omitted)). Furthermore, requiring the Court to defer until a bond hearing is held and an appeal has been heard before the Board of Immigration Appeals would simply delay adjudication of a "clear[] and unambiguous[]" violation of Petitioner's rights. *Lyons*, 840 F.2d at 205; *see also Almonte v. Genalo*, No. CV 26-3633, 2026 WL 2983349, at *10 (E.D.N.Y. Oct. 5, 2026) ("It is well-settled that [p]etitioner is not required to exhaust a process that was deficient from the outset" and where "a petitioner has raised a substantial constitutional question" (internal quotations and citations omitted)). Accordingly, the Court will excuse exhaustion here.

**B. Lawfulness of Petitioner's Arrest**

"As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States[,]" so officers may not arrest an individual "based on nothing more than possible removability. . . ." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Where "the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id.* If an officer suspects that a noncitizen is "removable, a federal official issues an administrative document called a 'Notice to Appear.'" *Arizona*, 567 U.S. at 407 (first citing 8 U.S.C. § 1229(a); then citing 8 C.F.R. § 239.1(a)). The NTA "does not authorize an arrest[;]" rather, it provides the noncitizen with information about the removal "proceedings, including the time and date of the removal hearing." *Id.* (citing 8 U.S.C. § 1229(a)(1)). Accordingly, the "federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process." *Id.*

Specifically, Section 236(a) of the INA provides that "*[o]n a warrant* issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the

alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added); *see also Juarez v. Mullin*, No. CV 26-7008, 2026 WL 2981947, at *2 (E.D. Pa. Oct. 5, 2026) (same). "The language of this provision is clear: Section 236(a) 'requires a warrant for arrest[]'" and detention. *Tabora-Brizuela v. Mullin*, --- F. Supp. 3d. ----, No. CV 26-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026) (quoting *Hernandez v. Blanche*, No. CV 26-6195, 2026 WL 2569475, at *3 (E.D. Pa. Aug. 31, 2026)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a) "authorizes detention [under that section] only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))); *Sagbay v. Jamison*, No. CV 26- 7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Section 1226(a) is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release the arrested alien are likewise not triggered." (internal quotations and citation omitted)). A Form I-200 is the administrative warrant that the U.S. Department of Homeland Security ("DHS") and ICE employ when arresting noncitizens under Section 1226(a). Importantly, the Form I-200 authorizes a noncitizen's arrest if it is issued "*[a]t the time of issuance of the notice to appear, or at any time thereafter* and up to the time removal proceedings are completed[.]" 8 C.F.R. § 236.1(b)(1) (emphasis added).

As this Court previously held in *Lopez-Lopez*, "[w]hen these provisions are taken together, they indicate that 'DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA.'" No. CV 26-7618, 2026 WL 3094744, at *3 (E.D. Pa. Oct. 16, 2026) (quoting *Vladimir G. v. Easterwood*, No. CV 26-2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026) (citations omitted))); *see also Islamuddin A. v. Blanche*, No. CV 26-3340, 2026 WL 2546280, at *3 (D. Minn. Aug. 28, 2026) ("To be valid, then, a Form I-200 warrant

must issue at the same time or after the Department of Homeland Security issues an NTA." (internal quotations and citations omitted)). As the Court explained, "this is because '[a] notice to appear' is a 'case-initiating document'—'like an indictment in a criminal case [or] a complaint in a civil case'—and 'serves as the basis for commencing a grave legal proceeding' against a noncitizen." *Lopez-Lopez*, 2026 WL 3094744, at *3 (E.D. Pa. Oct. 16, 2026) (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (citation omitted)); *see also Loaeza v. Bausch*, No. CV 26-00945, --- F. Supp. 3d ----, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026) ("The Notice to Appear ('NTA') is the immigration version of a charging instrument and begins the removal process." (internal quotations and citation omitted)); 8 U.S.C. § 1229(a)(1) (explaining that noncitizens "shall" be provided with "written notice" of the "removal proceedings[,]" which is "referred to as a 'notice to appear'").

Here, Respondents failed to properly follow this sequence. Respondents acknowledge as much in their briefing. *See* ECF No. 6 at 1–3; *see also* ECF No. 9 at 1. That is, in the Opposition, Respondents describe the apparent "sequencing issue" as follows:

> On October 27, 2026, during commercial vehicle inspections in Bristol, Pennsylvania, at approximately 10:15 a.m., [a] Supervisory Detention and Deportation Officer . . . randomly inspected Petitioner's Isuzu box truck[;] Petitioner was identified as Oscar Rolando Ramos Gonzalez and stated that he was from Honduras . . . . [and] ICE indices were reviewed and revealed no prior immigration history or lawful immigration status in the United States[;] . . . . [then] the I-200 Arrest Warrant [was prepared] between 11:15 and 11:18 a.m. and provided . . . to [the] Deportation Officer . . . . [who] served the I-200 on Petitioner at the time of his arrest at approximately 11:22 a.m.[;] . . . . [and] Petitioner was . . . served with a notice of custody determination at 1:04 p.m. on October 27, 2026. . . .

ECF No. 6 at 1–2. Respondents' Supplemental Response further establishes that Respondents failed to generate and provide Petitioner with an NTA until he was taken back to the

ICE Field Office "between approximately 3:00 and 4:00" p.m. *See* ECF No. 9 at 1. This means that at the time of Petitioner's arrest, Petitioner was not subject to an existing NTA and Respondents did not issue Petitioner one contemporaneously with his arrest.[2] *See id.* Accordingly, the Court finds that the Form I-200 Warrant that Respondents used to arrest Petitioner is invalid, which renders his arrest and detention invalid. *See Yeleshev v. Larocco*, No. CV 26-2294, 2026 WL 1353806, at *4 (E.D.N.Y. May 14, 2026) ("The warrant's *execution* cannot precede the NTA—that is, ICE cannot arrest the individual pursuant to an I-200 before an NTA has issued. But here, the arrest was effectuated before the NTA was created. That flaw renders the warrant and the arrest invalid."); *Loaeza*, 2026 WL 2150155, at *2 ("Because removal proceedings were not pending against [the petitioner] when he was arrested . . . under the purported authority of § 1226(a), [r]espondents had no statutory authority to make the arrest or to detain him under that provision."); *Vladimir G.*, 2026 WL 1786418, at *3 (finding that a petitioner was arrested "pursuant to an invalid warrant[,]" because "an ICE agent drew up the Form I-200 warrant upon encountering [the petitioner] and speaking with him during a traffic stop, and that the NTA was drawn up only after [the petitioner] had been taken into custody and was in booking[,]" which rendered his arrest "unlawful"). Accordingly, Petitioner is being unlawfully detained in violation of the INA, which is "grounds for habeas relief." *Tabora-Brizuela*, 2026 WL 2908095, at *3.

---

[2] Respondents appear to further concede that the "sequencing issue" in this case renders Petitioner's arrest improper under existing caselaw. *See* ECF No. 6 at 1–3; *see also* ECF No. 9 at 1. That is, in the later pages of their brief, Respondents seek reconsideration of this Court's decision in *Lopez-Lopez*. The Court declines to reconsider its decision, which has since been joined by numerous other Courts within this District, *see, e.g.*, *Chub Coc v. Jamison*, No. CV. 26-8177, 2026 WL 3270087, at *4 (E.D. Pa. Oct. 30, 2026) (Sanchez, J.); *Garcia Arevalo v. Jamison*, No. CV 26-7971, 2026 WL 3218224, at *4–5 (E.D. Pa. Oct. 27, 2026) (Marston, J.); *Vasquez Cruz v. Jamison*, --- F. Supp. 3d ----, No. CV 26-7784, 2026 WL 3182469, at *3 (E.D. Pa. Oct. 23, 2026) (Wolson, J.), simply because Respondents disagree with the outcome or the Court's reading of the relevant statutory framework.

Moreover, Respondents cannot fall back on their authority to detain a noncitizen without a warrant under 8 U.S.C. § 1357(a)(2). Section 1357(a)(2) gives ICE "limited authority to make warrantless arrests." *Id.* at *2 (first citing 8 U.S.C. § 1357(a)(2); then citing *Arizona*, 567 U.S. at 408). An officer is authorized to arrest a noncitizen "without [a] warrant" if the officer "has reason to believe that the [noncitizen] so arrested is in the United States in violation of" certain immigration "law[s] or regulation[s] and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Courts have interpreted the "reason to believe" language "as equivalent to 'probable cause.'" *Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)). The analysis of probable cause "turns on what the arresting officer knew at the time they took the individual into custody." *Id.* (citing *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025)).

Here, there is no indication in the record that ICE officers had "reason to believe" that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). Indeed, Respondents explicitly state that Petitioner was stopped by ICE officers as part of a "random" safety inspection of Petitioner's work vehicle. ECF No. 6 at 1, ECF No. 6-1 at 2.[3] Moreover, the fact that ICE officers issued a Form I-200 Warrant for Petitioner's arrest at the scene further confirms that they did not intend to proceed with a warrantless arrest pursuant to Section 1357(a)(2). *See id.* Section 1357(a)(2) thus does not provide a basis for Petitioner's arrest and detention either. This Court has previously commented that Respondents are taking a "make-

[3] The Court notes that because the Form I-200 Warrant was never produced for the Court, the Court refers to the Form I-213 Narrative. ECF No. 6-1 at 2.

it-up-as-we-go" approach to immigration enforcement and are "leaving others to backfill whatever was missed after the action [has] already been taken." *Martinez v. Jamison*, No. 26-cv-00718, 2026 WL 700335, at *4 (E.D. Pa. Mar. 12, 2026). That statement continues to ring true here.

**C. Remedy**

Respondents have violated the INA, and Petitioner is, therefore, being held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).[4] A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require[,]" *see id.* § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring) (citation omitted). "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf*, 553 U.S. at 693).

Immediate release from detention is warranted in this case as a remedy. *See Loaeza*, 2026 WL 2150155, at *2 (ordering immediate release from custody where a petitioner was unlawfully arrested under § 1226(a) on an invalid warrant); *Vladimir G.*, 2026 WL 1786418, at *3 (same) (collecting cases); *Yeleshev*, 2026 WL 1353806, at *8 (same).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. An appropriate Order will follow.

[4] The Court need not address Petitioner's arguments that his arrest and detention violate the Due Process Clause and the *Accardi* doctrine as this Petition can be decided on other grounds.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**